MoIlvakte, J.
The decision of this case depends on the construction and effect to be given to the last will and testament of George W. Cary. The question to be decided is, did the plaintiff, by his mortgage from Thomas C. Cary, or by his levy upon the same premises, acquire a lien thereon ? The plaintiff claims that the interest or estate of Thomas C., devised to him in the eighth item of his father’s will, as to the farm on which the testator resided, was subject to a lien under both the mortgage and execution ; and that the subsequent sale of this interest or estate, by Thomas to Charles, did not displace the lien either of the mortgage or the levy. These claims of the plaintiff are contested by Charles. What, then, was the true intent of the testator % And, what, the force and effect of this devise ?
The provisions of the will which at all affect the question before us are as follows:
“Item Fourth. — I give and bequeath to my beloved wife, Mary Elizabeth, the sum of six hundred dollars, to be paid out of my personal estate, one hundred dollars of the same to be paid over to her out of the first moneys collected by my exeoutor.
. “ Item Fifth. — I give and bequeath to my two sons, Thomas C. Cary and Charles Lincoln Cary, the residue of moneys and the proceeds of my obligations after giving the legacies afore *513 said, the same to be divided equally between them, share and share alike.
“ Item Sixth. — The balance of my personal estate, consisting of personal property, farming implements, stock, cattle, sheep and all other property, personal, except one top buggy and such surplus of grain on hand as shall not be needful for the purposes of the farm, which are to be sold by my executor, I give and bequeath to my wife aforesaid, and to my children before named for the purposes of carrying on my farm, until my oldest son, Thomas C. Cary, arrives at full age, they, the said family, to use the said property in common for the purposes of carrying on said farm and enjoying the proceeds of-the same, and when my oldest son-arrives at the age of majority, then I desire that my said daughter, Mary Elizabeth, shall sell her interest in the said property so held in common to my said wife and sons, before named. Then the said Mary to have for her said interest in said last named property the appraised value of such property as has been appraised and such property as has been accumulated from said farm during said period, prior to the said majority of said Thomas, to be equally divided, and the said Mary Elizabeth to be paid such amount for her interest as shall be agreed upon between them, she to sell to them, the said sons and my said wife, her interests in said property as aforesaid.
“ Item Seventh. — I give and bequeath to my said wife all my household and kitchen furniture, beds, bedding of every kind whatever, and when my said son Thomas shall have arrived at the age of majority as aforesaid, from and after that time I give and bequeath and so direct that my said wife shall have in lieu of dower one-third of the rents and profits of the farm on which I now reside in Green township aforesaid, as long as my said wife shall remain my widow, and in the event of her marriage then I order and direct that she shall forfeit her said dower as aforesaid, and in lieu thereof I direct that my two sons, Thomas and Lincoln, shall pay to her the sum of twenty-five hundred dollars, one thousand of which shall be paid within sixty days after such marriage and the balance in three equal annual payments without interest. This last item and the six-hundred-dollar *514 item and the former provisions made in the foregoing specifications are to be in lieu of all her dower in all my real estate, including three hundred and twenty acres of land I own in the state of Iowa.
“ Item Eighth. — I give and bequeath the farm on which I now live, of two hundred and eighty-five acres, to my two sons, Thomas and Lincoln, upon the following conditions :' 3. I direct that they, the said sons, shall not be allowed to sell and dispose of said farm until the expiration of ten years from the time my son, Charles Lincoln, arrives at full age, except to one another, nor shall either of my said sons have authority to mortgage or incumber said farm in any manner whatsoever, except in the sale to one another as aforesaid. I also give and bequeath to my two sons aforesaid, two hundred and forty .acres of land lying in the south-east corner of .Fayette county, Iowa, which I received by deed from Richard Probert, and the .same is now on record in said county; also eighty acres of land in Chickasaw county, Iowa, which I received by deed from A. H. Crawford.”
What estate in the home farm*did the testator intend, by the •.eighth item, to give to his sons ? By section 55 of the wills .act of 1852, in force when this will was made, it was provided, “ every devise of lands, tenements and hereditaments, in any will hereafter .made, shall be construed to convey all the. estate •of the devisor therein, which he could lawfully devise, unless it shall clearly appear by the will that the devisor intended to ■convey a less estate.” The estate of the devisor in these lands was an absolute fee simple. By other jmovisions in this will, •it is clear that the testator intended that, from the majority of Thomas, his widow, so long as she remained a widow, shoxild have >one-third of the rents and profits of said farm. Whether the right thus given to the widow was an interest in the land, ■or an interest in the rents and profits as such, it is quite clear to our minds that the fee simple absolute, subject to the right •of the widow, passed to the sons, as. fully and amply as the testator “ could lawfully devise ” it. It is true, the testator coupled with the devise the words: “ Upon the following conditions: I direct that they, the said sons, shall not be allowed to sell and *515 dispose of said farm until the expiration of ten years from the time my son, Charles Lincoln, arrives at full age, except to one another, nor shall either of my said sons have authority to mortgage or incumber said farm in any manner whatsoever, except in the sale to one another as aforesaid.” But by these conditions (so nominated) we do not understand that the testator intended a forfeiture upon breach ; there is no limitation over in favor of any one; and if a forfeiture for the benefit of his heirs was intended, the devisees, being two of his three heirs, would each have inherited a third part; so that, as heir of the testator, Thomas C. had full power to charge one-third of the land by mortgage to the plaintiff. But there is no indication in the will, or in the circumstances of the testator, that he intended, in any event, to die intestate as to this property; while, on the other hand, it seems clear to us that the testator intended, in all events, that his sons should take this farm, subject to the rights given to their mother, to have and to hold the same to them and their heirs forever. Instead of giving to his sons an estate in the land less than a fee .simple, his intent and purpose was to give them the fee simple, but to eliminate therefrom its inherent element of alienability, for a limited period, or to incapacitate his devisees, although sui juris, from disposing of their property for the same limited period, to wit: until the younger should arrive at thirty-one years of age — each and both of which purposes are repugnant to the nature of the estate devised.
By the policy of our laws, it is of the very essence of an estate in fee simple absolute, that the owner, who is not under any personal disability imposed by law, may alien it or subject it to the payment of his debts at any and all times ; and any attempt to evade or eliminate this element from a fee simple estate, either by deed or by will, must be declared void and of no force. Hobbs v. Smith, 15 Ohio St. 419.
Of course, we do not deny that the owner of an absolute estate in fee simple may by deed or by will transfer an estate therein less than the whole, or may transfer the whole upon conditions, the breach of which will terminate the estate granted, or that he may create a trust whereby the beneficiary *516 may not control the corpus of the trust, or even anticipate its profits. But as we construe this will, nothing of the kind has been here attempted. The attempt here was to fasten upon the estate devised a limitation repugnant to the estate, which limitation, and not the devise, must be for that reason declared void.
It is contended on behalf of defendant, Charles L. Cary, that by this devise an estate in trust, until the younger son should arrive at the age of thirty-one, was created for the benefit of the widow and children of the testator. That such was the effect of the so-called “ conditions,” when construed in connection with other clauses of the will. We do not so understand the- will.
When the elder son, Thomas, arrived at age, the daughter ceased to have any right whatever in the devised premises.
The right of the widow to one-tliird the rents and profits of the farm was not affected by the arrival of Charles at thirty-one years of age, and did not affect the absolute character of the devise to the sons. If she took during widowhood one-third of the lands, the sons took a vested remainder in that portion, and a present vested estate in the other two-thirds. If her right was to rents and profits as such, and the same was made a charge upon the lands, the estate of the sons nevertheless vested in them and for their own benefit, subject to the incumbrance. The relation of ■trustee and cestui que trust existed between them in no proper sense. The grantees of the sons would have stood in the same relation to the widow. No relation of personal confidence or trust was created, but one growing out of property rights alone —strictly legal rights. Whatever may have been the desire of the testator as to his widow remaining on this farm after the majority of the elder son, it is quite clear that the rights of the devisees were not made to depend on that event. The personal relations of the members of his family were not provided for after the arrival of Thomas at ago, but their property rights, respectively, were defined; and the rights of neither were subjected to the control or supervision of the other. There was no trust created.
If we could find in this devise a trust in favor of the widow, *517 •until Charles should arrive at thirty-one years of age (and certainly there was none before, if not after), so that no absolute estate vested in the sons previous to the termination of such trust estate, or if we could find a condition which prevented the vesting of the fee for such limited period, or a condition subsequent upon the happening of which the estate devised could be defeated, a different conclusion, no doubt, would be reached.
But the case before us, is the devise of an absolute fee, with a clause restraining the alienation and incumbering of the estate for a limited period, intended, no doubt, for the protection of the devisees, who alone are interested in the estate devised. In holding that such restraint is repugnant to the nature of the estate devised, and is void as against public policy, which in this state, in the interest of trade and commerce, gives to every absolute owner of property, who is suijuris, the power to control and dispose of such property, and subjects the same to the payment of his debts, we are fully aware of the fact that many authorities may and have been cited to the contrary. Others, however, support the view we have taken, but I shall not attempt either to review or reconcile the cases, being content to rest the decision upon what we conceive to be sound principle and sound policy. The owner of property cannot transfer it absolutely to another, and at the same time keep it himself. We fully admit that he may restrain or limit its enjoyment by trusts, conditions or covenants, but we deny that he can take from a fee simple estate its inherent alienable quality, and still transfer it as a fee simple.

Decree for plaintiff.